UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| In re ) | |
| ) | |
| SENAYDA PIERRE,   ) | Case No.  6:10-bk-21663-KSJ |
| ) | Chapter 13 |
| Debtor[s].   ) | |
| ) | |

MEMORANDUM OPINION DENYING
DEBTOR'S MOTION TO VALUE LIEN OF CITIMORTGAGE

Debtor, Senayda Pierre, and her non-filing spouse, Maurince Pierre, jointly own as tenants-by-the-entireties investment real estate. The investment property[1] (the "Property") is located in Orlando, Florida, and is encumbered by a first mortgage payable to CitiMortgage. Debtor has filed a motion seeking to value (or strip down) CitiMortgage's lien.[2]  Because Mr. Pierre, the co-owner of the Property, is not a joint debtor in this bankruptcy case, and also because he recently received a discharge in a separate Chapter 7 bankruptcy case, CitiMortgage objects to debtor's request.[3] The issue is whether the Court can strip down a partially unsecured mortgage in a Chapter 13 case when the collateral is jointly owned by husband and wife as tenants by the entireties and only one spouse is a debtor.  The Court holds that a prerequisite to stripping down a secured lien under § 1322(b)(2) of the Bankruptcy Code[4] is that both co-owner spouses must be debtors in the same Chapter 13 case and that each joint debtor also must qualify for a Chapter 13 discharge.

CitiMortgage holds a partially unsecured lien on the Property.  Although the parties do not agree as to the exact value of the real property at issue, debtor contends the value of the

---

[1] The property is not debtor's homestead.
[2] Doc. No. 32.
[3] Doc.  Nos. 36, 63.
[4] All references to the Bankruptcy Code are to 11 U.S.C. § 101, *et. seq.*

Property subject to CitiMortgage's lien is $77,000. CitiMortgage argues the value is higher but likely not to exceed the amount of the outstanding indebtedness of $148,962.[5]

## Strip Off and Strip Down

A Chapter 13 debtor normally can bifurcate an under-secured mortgage claim encumbering non-homestead property into a secured portion and an unsecured portion pursuant to § 506(a).[6] "Section 506(a) defines the secured and unsecured components of debts according to the value of the underlying collateral."[7] Sections 506(a) and 1322(b)(2) work in tandem for claims valuation.[8] Section 1322(b)(2) allows a debtor to "modify the rights of holders of secured claims," but not where the underlying collateral is the debtor's principal residence.[9]

The valuation of an under-secured mortgage claim is commonly referred to as a "strip down" or "cram down." Where the valuation of property indicates that a claim is partially secured, the secured portion of the claim is paid through the debtor's plan as an allowed secured claim, and the unsecured portion is "stripped down" to an allowed unsecured claim. The unsecured claim generally is paid on a pro rata basis along with all other general unsecured

---

[5] For the purposes of this opinion, the parties do agree that the amount of CitiMortgage's lien is more than the value of its collateral.
[6] *Nobelman v. Am. Savs. Bank*, 508 U.S. 324, 328-29 (1993); *Tanner v. FirstPlus Fin., Inc.* (*In re Tanner*), 217 F.3d 1357, 1360 (11th Cir. 2000).
Section 506(a) provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

[7] *In re Tanner*, 217 F.3d at 1358.
[8] *Id*. at 1360.
[9] Section 1322(b)(2) provides a plan may, subject to subsections (a) and (c):
> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims.

In addition to stripping down or stripping off a mortgage, modification of a claim pursuant to § 1322(b)(2) may include modifying the amount or timing of payments on the claim, reducing the interest rate, or deferring a balloon payment.

claims.  If a mortgage claim is completely unsecured, a Chapter 13 debtor can eliminate or "strip off" the entire secured claim, leaving the creditor with only one claim, an unsecured claim, pursuant to § 506(d).[10]  A wholly unsecured lien claim is void pursuant to § 506(d).

The same is not true in a Chapter 7 case.  A Chapter 7 debtor cannot strip off a totally unsecured lien because no Chapter 7 counterpart to § 1322(b)(2) exists.[11]  Neither lien strip off nor lien cram down is available in Chapter 7.  The issue is how these restrictions on modifying secured claims work in this particular case, where debtor seeks to strip down a partially unsecured claim on the Property, a remedy unavailable to her non-filing husband who owns the Property as a tenant by the entirety.

With the recent economic recession and the drastic devaluation of real property values, Mrs. Pierre and her husband stopped making payments to CitiMortgage and other lenders for the debt owed on their multiple investment properties.  CitiMortgage and the other lenders instituted foreclosure actions to recover their collateral. On June 14, 2010, debtor and her husband jointly filed a Chapter 7 bankruptcy case to stop these foreclosures.[12]  The debtors indicated they intended to surrender their interest in their jointly owned properties, including the Property subject to this dispute.[13] The Chapter 7 trustee submitted a report of no distribution declaring the case a no-asset case and abandoning all property.[14]  Both debtors in the joint Chapter 7 case received a discharge pursuant to § 727(a) on October 5, 2010.[15]

---

[10] *In re Tanner*, 217 F.3d at 1360 (holding any claim that is wholly unsecured is not protected from modification under § 1322(b)(2)). Section 506(d) provides:
> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—
> (1) Such claim was disallowed only under section 502(b)(5) or 502(e) of this title; or
> (2) Such claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

[11] *Armstrong v. Regions Bank* (*In re Armstrong*), No. 6:10-cv-1316-Orl-31, 2011 WL 768080, at *3 (M.D. Fla. Feb. 28, 2011); *In re Hoffman*, 433 B.R. 437, 440 (Bankr. M.D. Fla. 2010).

[12] *In re Maurince and Senayda Pierre*, Case No. 6:10-bk-10319-KSJ.

[13] Case No. 6:10-bk-10319-KSJ, Doc. No. 1, Pages 36 and 37.

[14] Case No. 6:10-bk-10319-KSJ, Doc. No. 1, administrative entry, August 17, 2010.

[15] Case No. 6:10-bk-10319-KSJ, Doc. No. 18.

Shortly thereafter, on December 6, 2010, *only* Mrs. Pierre filed this Chapter 13 case. Contrary to the Statement of Intentions she and her husband filed in their joint Chapter 7 case, Mrs. Pierre now states that she wants to retain (not surrender) her jointly owned real property, including CitiMortgage's collateral. Because she wants to strip down or strip off various secured liens encumbering the investment properties she now seeks to retain, Mrs. Pierre sought, and was granted, a revocation of her Chapter 7 discharge.[16] Given the recent line of cases decided by Bankruptcy Judge Arthur B. Briskman, the revocation of Ms. Pierre's discharge was inadvertent and would not be granted today.[17] However, what was done was done, and this Court allowed Mrs. Pierre to revoke her discharge. Her husband, however, is still receiving the benefits of his Chapter 7 discharge.

Mr. Pierre, who is not a debtor in this case, would not be entitled to receive a Chapter 13 discharge within four years of the petition date of his previous Chapter 7 case under §1328(f)(1). Section 1328(f) was added to the Bankruptcy Code in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), and prevents courts from issuing two discharges to a single debtor in rapid succession in so-called "Chapter 20" situations.[18] (A "Chapter 20" occurs where a debtor files a Chapter 13 case shortly after obtaining a Chapter 7 discharge). Therefore, even if he were to file a Chapter 13 case, Mr. Pierre still could not cram down

---

[16] Case No. 6:10-bk-10319-KSJ, Doc. No. 28.

[17] *In re Poorvin*, No. 6:11-bk-01028-ABB, 2011 WL 5572607 (Bankr. M.D. Fla. Nov. 15, 2011); *In re Gomez*, 456 B.R. 574 (Bankr. M.D. Fla. 2011); *In re Attaway*, No. 6:09-bk-17777-ABB (Bankr. M.D. Fla. Feb. 2011); *see, also*, *In re Stokes*, Case No. 6:09-bk-01126-ABB (Bankr. M.D. Fla. Feb. 9, 2011) (denying debtor's motion to waive his Chapter 7 discharge in converted case where he sought to recharacterize his home as investment property and permanently modify the secured claims encumbering the property). "The discharge injunction is permanent; it forever enjoins a debtor's creditors from pursuing the debtor for discharged debts. Debtors and their creditors rely upon the permanency of the discharge and the discharge injunction." *In re Gomez*, 456 B.R. at 577. To allow a debtor to vacate his discharge "would undermine the sanctity of the Chapter 7 discharge and the discharge injunction" and "lead to abuses of the bankruptcy system by debtors who seek to avoid the repercussions of Section 1328(f)." *Id.*

[18] Section 1328(f) provides:
> (f) Notwithstanding subsections (a) and (b), the court shall not grant a discharge of all debts provided for in the plan or disallowed under section 502, if the debtor has received a discharge—
> (1) in a case filed under chapter 7, 11, or 12 of this title during the 4-year period preceding the date of the order for relief under this chapter, or
> (2) in a case filed under chapter 13 of this title during the 2-year period preceding the date of such order.

CitiMortgage's claim because he cannot receive a discharge in the later Chapter 13 case. The vast majority of courts, including this one, uniformly have held that any modifications to secured creditors' rights through cram down or strip off are not effective unless and until the debtor receives a Chapter 13 discharge.[19] Mr. Pierre will never receive such a discharge. This Court similarly has held that a lien valued at zero pursuant to § 506(d) is not void again unless and until the debtor receives a discharge.[20] The bright-line rule for extinguishment of a lien, as set forth in *In re Sadala*, was created to protect the creditor's interest in the event a debtor defaults prior to conclusion of his Chapter 13 case.[21]

Looking to the plain language of § 1328(f)(1), the confirmation requirements of § 1325(a)(5), and Congress' intent in enacting BAPCPA, the vast majority of courts have determined cram down and strip off are impermissible where a debtor is prohibited from receiving a discharge pursuant to § 1328(f).[22] Allowing cram down or a strip off of a lien without a discharge or payment of the debt would result in a "'de facto discharge, a benefit to which [debtors who are prohibited from receiving a discharge pursuant to Section 1328(f)] are not entitled.'"[23] Put another way, allowing a debtor to discharge his debts in a Chapter 7 and then immediately filing a Chapter 13 to strip off or cram down a mortgage claim would be equivalent to modifying the mortgage in the Chapter 7, which a debtor cannot do.

---

[19] *In re Slate*, No. 6:11-15737-ABB (Bankr. M.D. Fla. Feb. 2, 2012); *In re Rosa*, No. 6:10-bk-07799-ABB (Bankr. M.D. Fla. Dec. 15, 2011); *In re Judd*, No. 6:11-bk-04093-ABB (Bankr. M.D. Fla. Dec. 1, 2011); *In re Morrobel*, No. 6:10-bk-17417-ABB (Bankr. M.D. Fla. May 3, 2011); *In re Fleeton*, No. 6:10-bk-07391-ABB (Bankr. M.D. Fla. Apr. 12, 2011); *In re Attaway*, No. 6:09-bk-17777-ABB (Bankr. M.D. Fla. Feb. 18, 2011); *In re Stokes*, Case No. 6:09-bk-01126-ABB (Bankr. M.D. Fla. Feb. 9, 2011); *In re Daniel J. Vega*, No. 6:10-bk-11229-ABB (Bankr. M.D. Fla. Nov. 30, 2010); *In re Trujillo*, No. 6:10-bk-02615-ABB, 2010 WL 4669095 (Bankr. M.D. Fla. Nov. 10, 2010); *In re Colbourne*, No. 6:10-bk-00983-ABB, 2010 WL 7376291 (Bankr. M.D. Fla. Nov. 8, 2010).

[20] *In re Sadala*, 294 B.R. at 185.

[21] This decision was issued prior to the enactment of BAPCPA and §§ 1328(f) and 1325(a)(5). With the enactment of §§1328(f) and 1325(a)(5), the creditor's rights are protected in the situation where the Chapter 13 case fails.

[22] Section 1325(a)(5) was enacted by BAPCPA and requires for confirmation that the plan provides the holder of an allowed secured claim retain its lien securing its lien until the earlier of the payment of the underlying debt determined under nonbankruptcy law or discharge under § 1328. Therefore, strip off or cramdown occurs at discharge. *In re Gerardin*, 447 B.R. 342, 350 (Bankr. S.D. Fla. 2011) (en banc); *In re Jarvis*, 390 B.R. 600, 607 (Bankr. C.D. Ill. 2008); *In re Lilly*, 378 B.R. 232, 236 (Bankr. C.D. Ill. 2007).

[23] *In re Gerardin*, 447 B.R. at 349 (*quoting In re Fenn*, 428 B.R. 494, 500 (Bankr. N.D. Ill. 2010)).

A minority of courts have allowed the cram down of mortgage claims in Chapter 20 situations, arguing the purpose of Chapter 13 is to protect debtors' homes.[24] Such contention contradicts Congress' clearly articulated intent in creating Chapter 13.[25] Senate Report 95-989 (Bankruptcy Reform Act of 1978) sets forth:

> The new Chapter 13 undertakes to solve these problems insofar as bankruptcy law can provide a simple yet precise and effective system for individuals to pay debts under bankruptcy court protection and supervision. The new chapter 13 will permit almost any individual with regular income to propose and have approved a reasonable plan for debt repayment based on that individual's exact circumstances.[26]

The House of Representatives Report 95-595 sets forth:

> The purpose of Chapter 13 is to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period. In some cases, the plan will call for full repayment. In others, it may offer creditors a percentage of their claims in full settlement.[27]

Chapter 13, as the legislative history sets forth, was created to protect overextended individual wage earners desiring to voluntarily repay their debts through the automatic stay and provide financial relief through a fresh start. To view Chapter 13 as an instrument for protecting real property, or as a panacea for the real estate recession, misconstrues Congress' intended purpose of Chapter 13. Although debtors indeed may use Chapter 13 to save their homes, the legislative purpose of Chapter 13 is to maximize recovery to creditors by allowing debtors to cure arrears and make payments over a period of up to 60 months.

The legislative history of BAPCPA also indicates Congress was much more interested in having debtors repay their debts than in saving their homes. The 2005 amendments, as established by the legislation's title "Bankruptcy Abuse Prevention and Consumer Protection

---

[24] *See, e.g., In re Scantling*, __ B.R. __, 2012 WL 593218, at *8 (Bankr. M.D. Fla. Feb. 24, 2012) ("A central purpose of chapter 13 is to save homes.").
[25] Chapter 13, entitled "Adjustment of Debts of an Individual with Regular Income" and derived from Chapter XIII of the Bankruptcy Act of 1938, was enacted by Congress in the Bankruptcy Reform Act of 1978, Public Law No. 95-598.
[26] S. REP. No. 95-989, at 13 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5799.
[27] H.R. REP. No. 95-595, 95th Cong., 1st Sess. 118 (1977), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 6079.

Act," were intended to curb what was perceived to be abusive bankruptcy practices, and to ensure that debtors with the ability to repay their debts do so.[28] Sections 1328(f) and 1325(a)(5) were enacted as part of the 2005 overhaul to prohibit debtors from receiving two discharges within a four year period and to increase repayment obligations by debtors. BAPCPA certainly was not enacted to "save homes." These two new provisions, particularly when read in conjunction with Section 348(f), which is also a BAPCPA addition to the Bankruptcy Code, clearly posit that a discharge is fundamental to the modification of a secured claim.[29] Attempts to strip off or cramdown in a Chapter 20 no-discharge situation not only violate the plain language of the Bankruptcy Code, but violate Congress' clear intent in enacting BAPCPA.

Returning to Mrs. Pierre's dilemma, she owns the Property at issue with her husband as tenants by the entireties. Mr. Pierre was discharged of his *in personam* liability to CitiMortgage in his previous Chapter 7 case and cannot now receive a Chapter 13 discharge. Mrs. Pierre, however, remains fully liable to CitiMortgage because she revoked her Chapter 7 discharge. Mrs. Pierre now would like strip or value down CitiMortgage's lien in this Chapter 13 case, even though her husband cannot.

Mrs. Pierre's request raises at least two issues. First, whether one spouse who owns property as a tenant by the entireties with another spouse can strip down a partially secured lien (or strip off a totally unsecured lien) in a Chapter 13 case, when the other spouse is not also a co-debtor in the bankruptcy case. Second, even if the law allows one co-owner as tenants by the entirety to independently strip a secured lien in an individual Chapter 13 case, whether Mrs. Pierre can strip a secured lien in her own Chapter 13 case when Mr. Pierre, the co-owner and

---

[28] H.R. REP. No. 109-31, pt. 1, at 2 (2005), *as reprinted in* 2005 U.S.C.C.A.N. 88, 89. "The purpose of the bill [S. 256] is to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors . . . The heart of the bills' consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs-based bankruptcy relief' or 'means testing'), which is intended to ensure that debtors repay creditors the maximum they can afford."

[29] Section 348(f) provides that a lien modification is ineffective upon conversion of a Chapter 13 case to Chapter 7.

non-debtor, is not entitled to similar relief due to a prior discharge. The Court here answers both questions in the negative.

## Spouses Owning TBE Property
## Must File Joint Chapter 13 Cases to Value Secured Liens

Here, Mrs. Pierre undisputedly owns the property at issue as a tenant by the entireties with her husband. Tenancy by the entireties (TBE) is a form of ownership of property unique to married couples.[30] Entireties property belongs to neither spouse individually, but each spouse holds "the whole or the entirety, and not a share, moiety, or divisible part."[31] In Florida, real and personal property acquired by a married couple is afforded a presumption of TBE ownership when all six unities are present: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests must be identical): (3) unity of title (the interest must have originated in the same instrument): (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names.)[32]

> "Should one of these unities never have existed or be destroyed, there is no entireties estate. As long as all the unities remain intact, however, each spouse's interest comprises the whole or entirety of the property and not a divisible part; the estate is inseverable. 'Neither spouse can sell, forfeit or encumber any party of the estate without the consent of the other, nor can one spouse alone lease it or contract for its disposition. Creditors cannot levy on entireties property to satisfy the debt of an individual spouse.'"[33]

The first issue is whether, in this Chapter 13 case, Mrs. Pierre can strip down CitiMortgage's lien, even though her spouse and co-TBE-owner is not a debtor. With two

---

[30] *Beal Bank, SSB v. Almand & Assoc.*, 780 So.2d 45, 52 (Fla. 2001).
[31] *Bailey v. Smith*, 103 So. 833, 834 (Fla. 1925).
[32] *Beal Bank*, 780 So.2d at 52.
[33] *U.S. v. One Single Family Residence With Out Buildings Located at 15621 S.W. 209th Ave., Miami, Fla.*, 894 F.2d 1511, 1514 (11th Cir. 1990)(*citations omitted*).

exceptions,[34] every court addressing the issue has refused to allow a spouse in an individual Chapter 13 case to strip down or off a mortgage encumbering TBE property.[35]

In *In re Hunter*, Judge Mayer carefully reviewed applicable TBE law and concluded that individual debtors simply are prohibited from stripping down or off a mortgage unless the other spouse also is a joint debtor in the Chapter 13 case.[36] Central to Judge Mayer's analysis was the treatment of a husband and wife as single entity pursuant to TBE law:

> Fundamentally the estate rests on the legal unity of husband and wife. It is therefore a unit, not made up of divisible parts subsisting in different natural persons, but is an indivisible whole, vested in two persons actually distinct, yet to legal intendment one and the same.[37]

Judge Mayer, looking to the applicable state TBE law, delineated the rights and responsibilities of spouses who own property as tenants by the entirety. An essential characteristic of TBE property is that each spouse owns an undivided and indivisible interest in the entire property. A spouse may not unilaterally sever an estate held TBE. Judge Mayer concluded allowing an individual debtor to lien strip or cramdown TBE property would constitute a unilateral severance of the estate, which violates the fundamentals of TBE law.[38]

The Court agrees with this ruling and finds that nothing in Florida TBE law would posit a different result. Florida courts repeatedly have held that property owned as TBE "belongs to neither spouse individually, but each spouse is seized of the whole."[39] In concluding that no creditor of only one of the spouses can seize TBE property, the Florida Supreme Court held that TBE property is "an estate over which the husband and wife have absolute disposition and as to

---

[34] *In re Janitor*, 2011 WL 7109363 (W.D. Pa. January 4, 2011); *In re Strausbough*, 426 B.R. 243 (Bankr. E.D. Mich. 2010).

[35] *In re Hunter*, 284 B.R. 806 (Bankr. E.D. Va. 2002); *Alvarez v. HSBC Bank USA, N.A.*, No. MJG-11-2886, 2011 WL 6491670 (D. Md. Dec. 28, 2011); *In re Erdmann*, 446 B.R. 861 (Bankr. N.D. Ill. 2011); *see also In re Barra*, No. 09-16505-SSM, 2010 WL 2991028 (Bankr. E.D. Va. July 26, 2010) (stating the Court would follow *In re Hunter* if it had to rule on a TBE issue).

[36] *In re Hunter*, 284 B.R. 806 (Bankr. E.D. Va. 2002). *See also In re Barra*, 2010 WL 2991028 (Bankr. E. D. Va. July 26, 2010); *Alvarez v. HSBC Bank USA, Nat. Ass'n*, 2011 WL 6941670 (D. Md. Dec. 28, 2011).

[37] *In re Hunter*, 284 B.R. at 810.

[38] *Id.* at 814.

[39] *Beal Bank*, 780 So.2d at 53 (quoting *Bailey v. Smith*, 103 So. at 203).

which each, in the fiction of the law, holds the entire estate as one person."[40] More pertinent to this analysis, the First District Court of Appeal held that any encumbrance or conveyance [of TBE property] would also require joint action of the selling parties under the contract, since neither spouse can without the assent of the other, alien or forfeit any part of an estate by the entirety so as to defeat the rights of the other."[41] Simply stated, one benefit, and perhaps sometimes burden, of TBE ownership is that any type of ownership change requires joint action by both spouses. Mrs. Pierre simply cannot reduce or eliminate a mortgage encumbering real property she owns as TBE with Mr. Pierre, unless he is a debtor in this Chapter 13 case, and he is entitled to also receive a Chapter 13 discharge.

In the one decision allowing a sole spouse to strip a lien in a Chapter 13 case, *In re Strausbough*, the Michigan Bankruptcy Court assumed that a debtor's ability to strip a lien under § 506 is self-effectuating.[42] This reasoning is incorrect because, in a Chapter 13 case, modification of a lien is only possible upon the issuance of a Chapter 13 discharge under § 1328. As such, § 506 is only the beginning of the analysis, and unless and until a debtor complies with all provisions of Chapter 13, a debtor cannot modify a secured claim.

### In a Jointly-Filed Chapter 13 Case, Both Spouses Must Receive a Chapter 13 Discharge Before the Co-Debtors can Strip Off/Down a Secured Claim

The next issue is whether, even if Mr. Pierre were a joint debtor in this Chapter 13 case, both spouses could strip down CitiMortgage's lien. The Court concludes they could not because Mr. Pierre cannot receive a Chapter 13 discharge inasmuch as he received a Chapter 7 discharge within the applicable 4-year look-back period.[43] As previously discussed, a Chapter 13 debtor

---

[40] *Hunt v. Covington*, 200 So. 76, 77 (Fla. 1941).
[41] *Tingle v. Hornsby*, 111 So.2d 274, 277 (Fla. 1st DCA 1959). *But see, Gerson v. Broward County Title Co.*, 116 So.2d 455 (Fla. 2d DCA 1959) (holding that a husband may accept payment in discharging a note held by the entireties because possession by the husband *is* possession by the wife).
[42] *In re Strausbough*, 426 B.R. 243, 247-250 (Bankr. E.D. Mich. 2010).
[43] *In re Perez-Gomez*, Case No. 6:09-bk-13656-ABB, 2010 WL 5289498 (Bankr. M.D. Fla. December 7, 2010); *In re Gerardin,* 447 B.R. 342.

may strip a lien pursuant to § 506 and § 1322(b)(2) of the Bankruptcy Code. The strip off or cramdown is only effective, however, upon the issuance of a Chapter 13 discharge, which only occurs when all payments are completed under a confirmed plan of reorganization, and only if each debtor has complied with the provisions of § 1325. A debtor who has received a Chapter 7 discharge within the prior four years cannot receive a Chapter 13 discharge pursuant to § 1328(f). Here, because Mr. Pierre recently received a Chapter 7 discharge, he simply cannot receive a discharge in this Chapter 13 and, as such, neither he nor his wife, Mrs. Pierre, is entitled to strip down CitiMortgage's lien.

In the decision of *In re Erdmann*, the Bankruptcy Court for the Northern District of Illinois held that when one of the co-debtors is ineligible to receive a Chapter 13 discharge due to an earlier Chapter 7 discharge, neither spouse could strip a lien encumbering their jointly-owned property.[44] The Court rightfully established a black and white rule that both co-owners of TBE property must be joint debtors and each must be eligible to receive a Chapter 13 discharge before either can strip a lien.[45]

This Court also believes allowing one co-TBE owner to strip liens unilaterally would result in other types of mischief that could affect the integrity of the bankruptcy process and state property recordation procedures. This case is a perfect example. Here, Mr. Pierre has discharged his personal liability to CitiMortgage in his Chapter 7 case. Yet, rather than truly surrendering his interest in the Property, which is the normal result when one surrenders their interest in a Chapter 7 case, his co-TBE owner, Mrs. Pierre, is attempting to retain the property in this Chapter 13 case but substantially reduce or eliminate the amount of the secured claim. This places the secured creditor CitiMortgage in an untenable and unfair predicament. CitiMortgage cannot foreclose on the property hollowly surrendered in Mr. Pierre's Chapter 7 case, due to

---

[44] *In re Erdmann*, 446 B.R. 861, 856 (Bankr. N.D. Ill., 2011).

[45] *Id* at 868-69 (noting that allowing one co-owner to strip a lien would result in confusion in state property records because the mortgage arguably is reduced or eliminated as to one spouse but not the other. Which would control?

Mrs. Pierre's Chapter 13 case, nor can CitiMortgage sue Mr. Pierre for any deficiency judgment due. For all purposes, Mr. Pierre is receiving the full benefit of his wife's Chapter 13 discharge, even though he is not entitled to the benefits. For this, and the other reasons restricting debtors from benefitting from a Chapter 7 case rapidly followed by a Chapter 13 case, *i.e.*, Chapter 20 cases, the Court adopts the reasoning of *In re Erdmann* and sets a black and white rule: co-TBE owners must file a joint Chapter 13 case and both must receive Chapter 13 discharges before *either* can strip down/off a secured lien.

Here, Mrs. Pierre has failed on both prongs of this test. Her husband and co-TBE owner is not a joint debtor in this Chapter 13 case. Moreover, even if he were, he could not strip down the lien of CitiMortgage because he is not entitled to a discharge. Debtor's Motion to Value the Mortgage of CitiMortgage is denied. CitiMortgage's claim is allowed in full as a secured claim. A separate order consistent with this Memorandum Opinion shall be entered.

DONE AND ORDERED in Orlando, Florida, on March 16, 2012.

KAREN S. JENNEMANN
Chief United States Bankruptcy Judge

Copies provided to:

Debtor:  Senayda Pierre, 2405 Rob Lane, Orlando, FL  32806

Debtor's Counsel:  Andrew C. Baron, 1803 E. Kaley Street, Orlando, FL  32806

Chapter 13 Trustee:  Laurie K. Weatherford, P.O. Box 3450, Winter Park, FL  32790

Counsel for CitiMortgage, Inc.: Brad W. Hissing, Esquire, Box 800, Tampa, FL  33601